IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:11CR303 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | |
| LELAND PARKER, JR., | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Leland Parker, Jr. (Parker) (Filing No. 28). Parker is charged in the Indictment with knowingly attempting to and engaging in a sexual act with a juvenile Indian female on and within the Omaha Indian Reservation in Indian Country, Nebraska, during June to August 1999, in violation of 18 U.S.C. §§ 1153 and 2241(c). Parker seeks to suppress statements he made to law enforcement officers on March 23, April 12, and August 26, 2011.

An evidentiary hearing was held on Parker's motion on November 10, 2011. Parker was present for the hearing along with his counsel, First Assistant Federal Public Defender Shannon P. O'Connor. The United States was represented by Assistant U.S. Attorney Michael P. Norris. During the hearing, the court heard the testimony of Special Agents Bradley J. Purscell (Agent Purscell) and Stanley Sawicki (Agent Sawicki) of the Federal Bureau of Investigation (FBI). The court received into evidence the following exhibits: Exhibit 1 - Advice of Rights (3/23/11); Exhibit 2 - Advice of Rights (4/12/11); and Exhibit 3 - Consent To Interview With Polygraph (4/12/11). A transcript (TR.) of the hearing was prepared and filed on November 19, 2011 (Filing No. 38).

**FINDINGS OF FACT**

On March 23, 2011, Agent Purscell met with Parker at CH, Inc. (CH), a halfway house in Council Bluffs, Iowa (TR. 5). Previously, Agent Purscell was informed by Edward Tyndall, Chief of Police for the Omaha Nation, that Tyndall's juvenile daughter, F.T., had been sexually assaulted by Parker (TR. 33). Parker is the nephew of Chief Tyndall (TR. 33). In the late morning of March 23, Agent Purscell arrived at CH and asked to speak with

Parker (TR. 4-5). Parker was residing at CH after his release from a federal correctional institution and was transitioning back to society (TR. 4-5). A halfway house staff member brought Parker to a CH office to meet with Agent Purscell (TR. 5). Agent Purscell met with Parker alone in the CH office which contained a desk and chairs (TR. 6). Agent Purscell was attired in civilian clothing and his firearm was concealed (TR. 19). Agent Purscell introduced himself as an FBI agent and then obtained biographical information from Parker, i.e., full name, date of birth, Social Security number, parents, residence, education, etc. (TR. 7). Parker, whose date of birth is July 18, 1983, provided the information requested and stated he had completed his GED (TR. 7; 10). Agent Purscell then advised Parker of his *Miranda* rights by using and completing a standard FBI Advice of Rights form (TR. 8-10; Ex. 1). Parker acknowledged his rights and signed the form without hesitancy and agreed to talk with Agent Purscell (TR. 10). Parker did not request to speak with an attorney or anyone else prior to the interview (TR. 10).

Parker was advised that an allegation had been made that he had inappropriate sexual contact with a juvenile female, F.T. (TR. 10-11). Agent Purscell had previously interviewed F.T. who provided Agent Purscell with details as to places and times of the sexual contact with Parker (TR. 12). Parker replied that such contact did not happen (TR. 11). Agent Purscell stated that F.T. had written a letter describing the contacts (TR.11). Parker asked to read the letter (TR. 11). The letter was written in green ink on notebook paper wherein F.T. described the assaults and the trouble such contact caused her in growing up through her teenage years (TR. 13). Agent Purscell provided the letter to Parker to read (TR. 11). Parker said those things did not happen (TR. 13). Parker stated he had to register as a sex offender when he was released from CH (TR. 15). Agent Purscell and Parker went over Parker's NCIC criminal history and discussed his conviction in tribal court of sexual contact with another Indian juvenile (TR. 15). Agent Purscell returned to the allegations of F.T., and Parker indicated he had "dry humped" F.T. over her clothing but denied any sexual intercourse with F.T. (TR. 16). Parker offered to take a polygraph examination to clear up the matter (TR. 17). The interview lasted approximately twenty to thirty minutes and was conducted in a conversational tone (TR. 13). The

interview ended with Agent Purscell calling back the CH staff member, thanking Parker for his time, and informing Parker he would be in touch to schedule a polygraph (TR. 18).

In April 2011, Agent Purscell learned CH had revoked Parker's privileges at CH, and Parker was detained at the Pottawattamie County jail where Agent Purscell called Parker to set up a polygraph examination (TR. 19-20). On April 12, 2011, Agent Purscell together with Agent Sawicki, an FBI polygrapher, met with Parker at the Pottawattamie County Sheriff's offices (TR. 20). Parker was brought from the adjoining jail to the Sheriff's offices where he met with the agents in an office (TR. 20). Agent Purscell introduced Parker to Agent Sawicki, described what was about occur, and casually chatted with Parker while Agent Sawicki set up his equipment (TR. 21). Agent Sawicki advised Parker of his *Miranda* rights using an FBI Advice of Rights form (TR. 21; Ex. 2). Parker understood his rights, agreed to proceed with the polygraph examination without an attorney, and signed a Consent to Interview With Polygraph form (TR. 21; Ex. 3). Parker was hooked up to the polygraph machine (TR. 21). Agent Purscell left Agent Sawicki and Parker alone in the room and observed the examination through a two-way mirror in an adjoining office (TR. 21-22).

Agent Sawicki conducted a pre-test interview, a polygraph examination, and a post-test interview (TR. 52-53). The pre-test interview consisted of gathering background information, explaining how the equipment works, explaining the test, and preforming a practice test (TR. 58). Agent Sawicki went over the allegations and what questions would be asked during the test (TR. 58). Parker was at ease in conducting the pre-test examination and was willing to proceed (TR. 60). The pre-test interview lasted approximately an hour and the actual test lasted approximately twenty minutes (TR. 63-64). Parker was then unhooked from the polygraph machine, and Agent Sawicki conducted the post-test interview (TR. 65). Agent Sawicki informed Parker he had failed the test (TR. 65). Agent Sawicki posed various theories of how the sexual assault may have occurred and Parker continued to deny the allegations (TR. 66). Agent Sawicki continued to try and explain what may have happened and how it was better for Parker to tell the truth about the incident (TR. 68). Parker then provided his version of the incident to include his sexual arousal and placing his penis around F.T.'s buttocks (TR. 69). Parker

denied he had penetrated F.T. (TR. 69-70). The post-test interview lasted approximately two and a half hours (TR. 70). Near the end of the post-test interview, Parker told Agent Sawicki that "he was done talking," and the interview was terminated immediately (TR. 71). Parker was then returned to his cell in the Pottawattmie County jail (TR. 71).

Parker was indicted by the Grand Jury for the District of Nebraska on August 24, 2011 ([Filing No. 1](#)). On August 26, 2011, Agent Purscell drove to the Wayne County jail to bring Parker to Douglas County Corrections so that Parker could appear in court for his arraignment in Omaha (TR. 35). When Agent Purscell arrived at the Wayne County jail, he searched Parker, took his fingerprints and a DNA swab, and place him in shackles (TR. 26). Agent Purscell did not advise Parker of his *Miranda* rights at that time (TR. 26). When Agent Purscell took Parker from the Sheriff's office to Agent Purscell's vehicle, Agent Purscell informed Parker of the charges against him (TR. 27). Parker asked if he was being charged with respect to F.T. or another juvenile (TR. 27). Agent Purscell informed Parker the charges were from the accusations made by F.T. (TR. 27). Parker asked whether he was being charged as an adult or as a juvenile (TR. 27). Agent Purscell stated Parker was being charged as an adult (TR. 27). Parker asked why he was being charged as an adult when it happened when he was a juvenile and asked "what the maximum time he was looking at" (TR. 27). Agent Purscell told Parker to stop talking as Agent Purscell did not want to *Mirandize* Parker and get into the case (TR. 28). There was no further discussion of the case on the trip to Omaha (TR. 28).

## LEGAL ANALYSIS
### A.  March 23 Interview at CH

Parker seeks to suppress statements he made to Agent Purscell at the CH halfway house in Council Bluffs, Iowa, on March 23, 2011. Agent Purscell treated Parker as being in custody and advised Parker of *Miranda* rights at the beginning of the interview. The touchstone for the admissibility of a defendant's statements is voluntariness. *[Brown v. Mississippi](#)*, [297 U.S. 278 (1936)](#). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. *[Mincey v. Arizona](#)*, [437 U.S. 385 (1978)](#); *[Colorado v. Connelly](#)*, [479 U.S. 157 (1986)](#); *[Schneckloth v. Bustamonte](#)*,

412 U.S. 218 (1973). In this case, Parker was advised of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). There is no evidence Parker did not understand the advice of rights. Even though Parker was advised of his *Miranda* rights, the court must examine the conduct of the law enforcement officials to determine whether or not there was an overreaching by law enforcement officials amounting to coercive police activity. Coercive police conduct will render a confession inadmissible. *Blackburn v. Alabama*, 361 U.S. 199 (1960). In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or his will was overborne. *United States v. Wilson*, 787 F.2d 375, 380-81 (8th Cir. 1986). The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. *Schneckloth*, 412 U.S. at 225-26. Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights. *Connelly*, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. **See** *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

      The interview by Agent Purscell took place in an office at CH. Parker was relaxed and cooperative with Agent Purscell even though Parker insisted in his denial of the allegations by F.T. Parker was not threatened or coerced into making any statements. Parker was no novice to police confrontation as indicated by Parker's criminal history. The interview ended as Parker agreed to take a polygraph at a later date. There is no evidence of any coercive police activity. The court finds Parker's statements to have been voluntarily made and Parker's motion to suppress his statements should be denied as frivolous.

### B. April 12 Polygraph and Interview

      Parker seeks to suppress any admissions he made during Agent Sawicki's polygraph and interview of Parker at the Pottawattamie County Sheriff's office on April 12, 2011. The polygraph was set up and arranged at Parker's request. Agent Purscell called

Parker at the Pottawattamie County jail where Parker was being held on other charges. When Agents Purscell and Sawicki arrived on April12, Parker was brought from the jail and seated in an office of the adjoining Sheriff's offices. Parker was again advised of his *Miranda* rights (Ex. 2) and his rights regarding the taking of the polygraph examination (Ex. 3). Parker was cooperative in the process which was explained to him in detail. Following the examination, Parker was informed he had failed the polygraph and he cooperated in the post-examination interview. Statements Parker made were not a result of any force, threats, or promises. The court finds no coercive police activity. The interview ended abruptly when Parker stated he did not wish to talk further. The court finds Parker's statements made to Agent Sawicki during the polygraph and post-examination interview to have been voluntarily made and Parker's motion to suppress should be denied as frivolous.

### *C. Statements Made During August 26 Transportation*

On August 26, 2011. Agent Purscell drove to Wayne, Nebraska, to pick up Parker and bring him to Omaha for the arraignment on the Indictment. Parker had been taken into custody by local authorities and was being held at the Wayne County jail. Upon Agent Purscell's arrival at the Wayne County Sheriff's Office, Parker was brought from the jail to the Sheriff's Office where Agent Purscell searched and fingerprinted Parker, took a DNA swab from Parker, and placed Parker in shackles. Agent Purscell did not advise Parker of any *Miranda* rights. Agent Purscell took Parker to Agent Purscell's vehicle and told Parker what he was being charged with in the Indictment. Parker asked Agent Purscell if he was being charged with the allegations of F.T. or some other juvenile. When told the Indictment was about F.T., Parker asked whether he was being charged as an adult or as a juvenile. When told he was being charged as an adult, Parker asked why he was being charged as an adult when the incidents happened when he was a juvenile. At that point Agent Purscell told Parker to stop talking about the case because he did not want give him *Miranda* warnings or interrogate him about the case. Parker made no further statements about the case.

Parker seeks to suppress his statements made to Agent Purscell while in Agent Purcell's vehicle before being transported to Omaha. Parker argues that Agent Purcell's announcement of what Parker was being charged with in the Indictment was a subtle form of interrogation designed to elicit statements from Parker when no *Miranda* rights were given. During the cross-examination of Agent Purscell, Parker's counsel stated: "You may have just committed perjury." (TR. 39). Agent Purscell denied the charge and stated he found the accusation offensive (TR. 39). Parker's counsel's feeble explanation for his line of inquiry was to make an outlandish accusation in order to get a response from the person to whom the charge was directed. Parker asserts Agent Purscell's announcement of the charge was questioning. The definition of questioning includes, "either express questioning or . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the [defendant]." *United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998) (**citing** *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). Failure to advise a custodial defendant of *Miranda* rights will render statements made by such a defendant as a result of police interrogation, inadmissible.

Parker's counsel likened his attack upon Agent Purscell to the statements Agent Purscell made to Parker as Parker was being placed in Agent Purcell's vehicle for the trip to Omaha. Parker's counsel had no evidence whatsoever of perjury by Agent Purscell. Parker's counsel's courtroom stunt was offensive to the witness and the court. It in no way mirrored what Agent Purscell told Parker about what Parker was being charged with in the Indictment. While Parker was unquestionably in custody at this time, Agent Purscell's statement was not interrogation in any form, direct or subtle. Agent Purscell simply informed Parker of the charges in the Indictment then answered Parker's questions. Agent Purscell did not ask Parker any questions. Further, Agent Purscell told Parker to say nothing further about the case as Agent Purscell did not want to question him about the case or give Parker *Miranda* warnings. The court finds Parker's statements were voluntarily made and were made without being the subject of questioning by Agent Purscell. Parker's motion to suppress should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

Leland Parker, Jr.'s motion to suppress (Filing No. 28) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 20th day of December, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.